16145

REGISTER v. LIFE INS. CO. OF VIRGINIA
(50 S. E. (2d) 197)

*Mr. John M. Scott,* of Florence, *for Appellant,*

*Messrs. Willcox, Hardee, Houck & Palmer*, of Florence, for *Respondent,*

November 10, 1948.

STUKES, Justice.

Appellant lives in Florence and was employed there in Senseney's Garage in 1945 when he was solicited by defendant's agent, Pittman, for the sale of an insurance policy on the life of plaintiff's wife. After the latter was visited at plaintiff's home by the agent a policy was issued and dated June 25, 1945, with death benefit of $250.00 payable to plaintiff as beneficiary. The premium was thirty-six cents per week, payable in advance on Mondays. Two weekly premiums were paid upon delivery of the policy. A premium receipt book was also given to plaintiff, in which record was made of the premium payments by the collecting agent. The book contained printed instructions that information of any change of address should be sent at once to the District Office of the insurance company. There was also the instruction that premiums were due each Monday in advance, and if the agent should not collect the premiums when due they should be sent to the District Office. It was centrally located in the City of Florence. The policy provided for a grace period of four weeks for the payment of premiums.

The agent called at Senseney's and collected the premiums with fair regularity. The last call was on April 22, 1946, when the premiums were paid to May 13 and plaintiff repeated the information formerly given the agent that his wife, the insured, was seriously ill and was a patient in the

McLeod Infirmary. Three days later, on April 25, 1946, plaintiff changed jobs and was thereafter employed at Furniture Industries and he left word at Senseney's where he could be located at his new employment. About the same time Pittman severed his connection with the insurance company and his collecting duties were temporarily taken over by the Assistant Manager of the District Office who was McIver Edwards. The latter went to Senseney's about May 6th to collect the premium from plaintiff and was informed by someone there that plaintiff was then working at Furniture Industries. Edwards went there next day but upon inquiry at the office for plaintiff he was told that he could not go in to see him at his work, nor could plaintiff be called out of the plant—he would have to be seen before or after work hours. Edwards ascertained from another employee in the District Office the location of plaintiff's home. It was off the Darlington highway, some three miles from Florence, and after inquiry in the neighborhood Edwards found the house. Another occupant, a Mrs. Moore, informed him that plaintiff was not at home, but probably at the hospital where his wife was confined. Edwards told Mrs. Moore his business and requested that Mrs. Moore inform plaintiff upon his return that he should either go to the District Office on the following Saturday morning before noon closing time, or else leave the premium money with Mrs. Moore, for which Edwards would later call. Hearing nothing from plaintiff, Edwards went back to plaintiff's home during the next week and again saw Mrs. Moore and no money had been left with her for payment of the premiums. This was all within the grace period of the policy. Mrs. Moore testified for the company and corroborated this evidence of Edwards except that she did not recall the part of their conversation in which she was asked, according to Edwards, to suggest that plaintiff leave the premium money with her. She said that she gave messages to plaintiff in accord with Edwards' requests in his interviews with her. Plaintiff in his testimony denied this.

Plaintiff further testified that he went to the District Office on two occasions on Saturday afternoons during the arrearage in the payment of the premiums, but the office was closed. It is undisputed that he returned to the District Office, during office hours, about two weeks after the death of his wife, the insured, which occurred on July 8, 1946, and offered to pay the back premiums. Meanwhile, the policy had been forwarded to the Home Office of the company for cancellation for non-payment of premium, which had been done.

The action was brought on July 30, 1946, for $3,000.00 actual and punitive damages for the alleged fraudulent breach of the policy contract. The complaint was upon the theory that plaintiff relied upon assurances of the soliciting and collecting agent that he would call on plaintiff each week for the premium and, upon failure in such, plaintiff need not worry for he would be allowed to catch up any delinquent payments upon the agent's next call, and that the premium calls ceased after the agent was informed of the insured's illness. However, sufficient of the evidence has been stated to fully justify the direction of verdict for the defendant from which this appeal was taken. Admittedly collections were made after the agent's knowledge of the insured's hospitalization; and repeated unsuccessful efforts were afterward made to collect the defaulted premiums which finally caused the lapse of the policy under its terms. The only reasonable inference is negation of fraud.

Appellant further contends that, granting that there was no evidence of fraud on the part of the company or its agents, yet the contended issue of actual damages should have been submitted to the jury. For this (under the pleadings and facts presented) there must have been evidence of negligent violation of an established custom in the collection of premiums. *Pack v. Metropolitan Life Ins. Co.*, 178 S. C. 272, 182 S. E. 747. We find in the record no evidence of negli-

gence of the company or its agents. On the contrary, their efforts to avoid lapse of the policy for non-payment of premium are worthy of commendation. Incidentally, it was brought out in the testimony that the financial interest of the agent lay in the collection of the premiums and retention of the policy in benefit; his income was lessened by the lapse.

An additional ground of appeal rests upon the exclusion from the evidence of testimony proffered by appellant to the effect that he had other policies of insurance (on himself and his children) which had not lapsed for non-payment of premiums because, presumably, the agents for the collection of those premiums were able to call upon appellant at Furniture Industries. The evidence was excluded upon objection as *res inter alios acta*. However, the propriety of the ruling need not be determined for, in view of the facts in evidence, the exclusion was not prejudicial. Upon respondent's agent's inability to interview the appellant at his last place of employment, the agent went twice to appellant's home after work hours in similar effort to see him and the only reasonable inference from the testimony is that appellant was promptly informed of the agent's visits and warnings but willfully or negligently failed to heed them. Similar testimony was offered by appellant in attempted reply which, of course, it was not; it was properly excluded upon objection.

We find no error. The judgment of the lower court is affirmed.

BAKER, C.J., and FISHBURNE, TAYLOR, and OXNER, JJ., concur.