17283

MARGARET IRBY, Respondent-Appellant, v. NORTH CAROLINA MUTUAL LIFE INS. CO., Appellant-Respondent

(97 S. E. (2d) 517)

*Messrs. Watkins, Vandiver & Freeman,* of Anderson, *for Appellant-Respondent,*

*W. Harper Welborn, Esq.,* of Anderson, *for Respondent-Appellant,*

April 9, 1957.

TAYLOR, Justice.

This appeal arises out of an action brought in the Court of Common Pleas for Anderson County, wherein Margaret Irby sought actual and punitive damages for an alleged breach of a life insurance contract with fraudulent intent accompanied by a fraudulent act.

Upon completion of the testimony, the insurance company's motion for a directed verdict was granted. Thereafter, the presiding Judge issued an Order granting plaintiff a new trial as to actual damages and affirming that portion of the previous Order directing a verdict for defendant as to punitive damages. Both parties appeal, plaintiff from so much of the Order as directs the verdict for defendant as to punitive damages and defendant from so much of the Order as grants a new trial as to actual damages.

The policy in question was upon the life of Margaret Irby; but her husband, Burgess Irby, a retired Duke Power Company employee, paid the premiums of 12 cents per week

thereon until it expired for non-payment of dues, November 8, 1954.

The complaint sets forth that the premiums were always paid at the home of the insured pursuant to an established custom built up by the agent of the insurer and that this custom was never varied until in 1954, when the agent, having observed that the insured was in bad health, willfully, wantonly, and purposely failed to call at the home for the collection of premiums with the purpose and design of causing the lapsing of the policy; that the insured is a doubtful insurance risk and was thereby deprived of her valuable property rights.

The testimony is short and there is little or no contradiction throughout.

Most of the premium payments were to the agent at the insured's home and such payments were noted in a receipt book; but when they were made at places other than the home, receipts would be issued therefor; and, thereafter, when the agent called at the home, these payments would be entered in the receipt book with the notation "receipt" thereby. Plaintiff introduced into the record the receipt book and a number of receipts, a perusal of which, when considered in conjunction with the testimony, reveals that insured's husband paid all the premiums. The receipts therefor were issued at various dates and at various places—in the pool hall, upon the streets, and the company's office.

The evidence does not substantiate insured's allegation that there was an established custom built up by the agent of always collecting the premiums at home, and there is no evidence that the insured was unlearned or was unaware of the location of the company's office. On the contrary, some of the premiums were paid there, and there being no custom of collecting at the home established by the evidence, there can be no violation thereof. Neither is there any evidence that the agent willfully, wantonly, and purposely failed to call at the home with the purpose and design of causing the

lapsing of the policy. On the contrary, there is testimony to the effect that it was to the agent's best interest to keep the account on the books. *Register v. Life Ins. Co. of Virginia,* 213 S. C. 508, 50 S. E. (2d) 197; *Pack v. Metropolitan Life Ins. Co.,* 178 S. C. 272, 182 S. E. 747.

We are of the opinion that so much of the Order as affirms the previous Order directing a verdict for the insurance company as to punitive damages be affirmed and that portion of the Order which reversed the previous Order and grants plaintiff a new trial as to actual damages should be reversed and set aside; and it is so ordered.

Affirmed in part; reversed in part.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.